UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| AT&T CORP., | ) | Case No. 1:05CV1904 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | MEMORANDUM |
| | ) | AND ORDER |
| OVERDRIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge McHargh |
| | ) | |

McHARGH, Mag.J.

The plaintiff, AT&T Corp. ("AT&T"), a New York corporation, has filed an amended complaint against the defendant, OverDrive, Inc. ("OverDrive"), a Delaware corporation, alleging breach of contract and unjust enrichment.  (Doc. 8.) In its answer, OverDrive asserted counterclaims alleging a breach of an implied covenant of good faith and fair dealing, fraudulent misrepresentation, and tortious interference.  (Doc. 17.)

Defendant OverDrive has filed a motion for summary judgment on the amended complaint.  (Doc. 37.)  AT&T has responded to that motion, and filed a cross-motion for summary judgment.  (Doc. 39-40.)  The parties have filed further responses as well.  (Doc. 44, 45, and 48.)

After those motions were filed, OverDrive filed objections to certain supporting materials filed by AT&T.  (Doc. 42-43.)  The court found the objections to the Gritchen affidavit, as well as the objections to Exhibits 1, 5-6, 8, and 10-14 (as inadmissible hearsay) well-taken.  However, the court overruled the objections to Exhibit 3, "AT&T Master Agreement," and Exhibit 7, "AT&T Internet Transport Services, Service Order Attachment."  (Doc. 49.)

## I. SUMMARY JUDGMENT

Summary judgment is appropriate where the entire record "shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Non-moving parties may rest neither upon the mere allegations of their pleadings nor upon general allegations that issues of fact may exist.  See Bryant v. Commonwealth of Kentucky, 490 F.2d 1273, 1275 (6th Cir. 1974).  The Supreme Court has held that:

> . . . Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The evidence need not be in a form admissible at trial in order to avoid summary judgment, but Rule 56(e) requires the opposing party:

> to go beyond the pleadings and by [his] own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."

Id. at 324.

The Sixth Circuit in Street v. J.C. Bradford & Co., 886 F.2d 1472 (6th Cir. 1989), has interpreted Celotex and two related cases, Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and Matsushita Electric Industrial Co., Ltd. v. Zenith Radio, 475 U.S. 574 (1986), as establishing a "new era" of favorable regard for summary judgment motions. Street points out that the movant has the initial burden of showing "the absence of a genuine issue of material fact" as to an essential element of the non-movant's case. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case. Street, 886 F.2d at 1479.

The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." Id. In ruling on a motion for summary judgment, the court must construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion. Kraus v. Sobel Corrugated Containers, Inc., 915 F.2d 227, 229 (6th Cir. 1990).

A motion for summary judgment pursuant to Rule 56 requires reference to "specific facts" designated by the use of affidavits, depositions, answers to interrogatories, and admissions on file, by the party with the burden of proof. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). A summary judgment affidavit must be sworn or verified.

3

Pollock v. Pollock, 154 F.3d 601, 611 n.20 (6th Cir. 1998) (unsworn affidavits not considered); Dole v. Elliott Travel & Tours, Inc., 942 F.2d 962, 968-969 (6th Cir. 1991) (unsworn statements not considered).  Documents submitted to support or oppose a summary judgment motion must be attached to an affidavit that both identifies and authenticates each document.  Stuart v. General Motors Corp., 217 F.3d 621, 635 n.20 (8th Cir. 2000); Carmona v. Toledo, 215 F.3d 124, 131 (1st Cir. 2000); Klein v. Manor Healthcare Corp., 19 F.3d 1433, 1994 WL 91786, at *6 (6th Cir. 1994) (TABLE, text in WESTLAW).

Defendant OverDrive's motion for summary judgment contends that:

> The evidence before this Court will reveal that (1) ATT invoices did not reflect that which ATT and OverDrive agreed, (2) ATT cannot establish, determine or explain the charges billed OverDrive or how such were computed, and (3) OverDrive was not unjustly enriched at ATT's expense.

(Doc. 37, at 2.)

In its response and cross-motion, AT&T argues that it is entitled to summary judgment on OverDrive's counterclaim alleging a breach of an implied covenant of good faith and fair dealing, because the charges were adequately described, and AT&T properly terminated services for nonpayment in accordance with the contract.  (Doc. 39, at 10.)  In addition, AT&T claims it is entitled to summary judgment on OverDrive's counterclaim alleging fraudulent misrepresentation, because OverDrive admits that no misrepresentations were made concerning the recurring charges.  Id. at 11.  Finally, AT&T asserts that OverDrive did not properly plead its counterclaim for tortious interference.  Id.

4

## II.  CHOICE OF LAW

This action is before the court under its diversity jurisdiction.  In a diversity action, the district court applies the choice of law rules of the state in which it sits.  Miller v. State Farm Mut. Auto. Ins. Co., 87 F.3d 822, 824 (6th Cir. 1996); National Union Fire Ins. Co. v. Watts, 963 F.2d 148, 150 (6th Cir. 1992).  Under Ohio choice of law rules, a forum selection clause in a commercial contract will usually govern, with the following caveats:

> Absent evidence of fraud or overreaching, a forum selection clause contained in a commercial contract between business entities is valid and enforceable, unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust.

Kennecorp Mortgage Brokers, Inc., v. Country Club Convalescent Hosp., Inc., 66 Ohio St.3d 173, 610 N.E.2d 987 (1993) (syllabus).  See also Preferred Capital, Inc., v. Associates in Urology, 453 F.3d 718, 721 (6th Cir. 2006).

OverDrive points out that the parties agreed to be governed on issues of contract "construction, interpretation, and performance" by the substantive law of the State of New York, pursuant to their contract, "AT&T Master Agreement, MA Reference No. 31574."  See doc. 37, at 15-16; doc. 39, at 6; doc. 39, DX 3, §12.6.

AT&T does not contend that enforcement of the forum selection clause would be unreasonable or unjust, or that the clause is invalid as the result of fraud or overreaching.  See generally doc. 39, at 6.  Thus, the court finds that the forum selection clause is valid and enforceable, and New York contract law will be applied.  Preferred Capital, 453 F.3d at 724.

5

### III.  BREACH OF CONTRACT

In the context of a motion for summary judgment, the court will construe the evidence, as well as any inferences to be drawn from it, in the light most favorable to the party opposing the motion, which is AT&T.  <u>Kraus</u>, 915 F.2d at 229.

Defendant OverDrive is a software company which provides 24-hour hosted internet services nationally to libraries, schools, and online booksellers.  M. Steven Potash ("Potash") is the President and Chief Executive Officer of OverDrive.  (Doc. 37, DX 1, Potash aff., at ¶¶ 1-2.)  Ray Fassett ("Fassett") is OverDrive's Comptroller.  (Doc. 37, DX 3, at ¶1.)

Visitors to various internet websites select digital books or music, using OverDrive's computers and technology, to download from a library or to purchase from an online merchant.  (Doc. 37, at 2, citing DX 1, Potash aff., at ¶¶ 2-6.) OverDrive contracted with AT&T for hosting data services and providing telecommunications services.  (Doc. 39, at 1-2; doc. 37, at 2-4; Potash aff., at ¶¶ 7-16.)

The amended complaint alleges that OverDrive ordered telecommunications services from AT&T beginning in August 2001, and that MIS, Local and Opus services were provided under accounts numbered 2101 4387 2233, OVDV-OVDCV02, and 018-00237.  (Doc. 8, Am.Compl., at ¶¶ 5-6.)  These services were allegedly provided "pursuant to Master Agreements 31574, 700359, and Service Order Attachments attached hereto as Exhibit A, Tariffs on file with the F.C.C., including Tariff Nos. 1, 2, 9, 11, and 13, and the AT&T Service Guide."  <u>Id.</u> at ¶ 7.

6

The amended complaint further alleges that OverDrive utilized these services, but failed to pay in full, and thus an amount of $275,977.96 is due and unpaid.  Id. at ¶¶ 8-10.

Under New York law, "an action for breach of contract requires proof of (1) a contract;  (2) performance of the contract by one party;  (3) breach by the other party;  and (4) damages."  Rexnord Holdings, Inc., v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994).  To create a binding contract, there must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.  Express Indus. & Terminal Corp. v. New York State Dep't of Transp., 715 N.E.2d 1050, 1053 (N.Y. 1999).  The terms of the agreement to which the parties assented must be sufficiently specific so that what was promised can be ascertained.  Michael H. Spector, A.I.A., P.C., v. Billy Smith's Sport Ctr., Inc., 809 N.Y.S.2d 482, 2005 WL 3240569, at *3 (N.Y. Sup. Ct. Nov. 30, 2005) (TABLE, text in WESTLAW) (citing Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher, 417 N.E.2d 541 (N.Y. 1980)).

Damages may not be based on speculation or general assumptions, but must be shown with reasonable certainty.  Peak v. Northway Travel Trailers, Inc., 811 N.Y.S.2d 798, 801 (N.Y. App. Div. 2006); City of New York v. State of New York, 801 N.Y.S.2d 8, 11 (N.Y. App. Div. 2005).  AT&T as plaintiff has the burden of proving the extent of damages suffered.  Peak, 811 N.Y.S.2d at 800; City of New York, 801 N.Y.S.2d at 11.

7

Defendant OverDrive does not dispute that one or more contracts existed between AT&T and OverDrive.  The breach alleged by AT&T is that OverDrive failed to pay completely for the services provided.  (Am.Compl., at ¶¶ 9-12.) OverDrive argues that AT&T was paid approximately $218,032.13 for its services, and that AT&T cannot establish the basis for the additional amounts claimed to be due.  (Doc. 37, at 20; DX 1, Potash aff., at ¶¶ 23-24.)

Specifically, OverDrive's motion for summary judgment contends that AT&T's invoices did not reflect the agreements between AT&T and OverDrive, and additionally, AT&T cannot establish or explain the charges billed to OverDrive, or how these charges were computed.  (Doc. 37, at 2, 7; see also doc. 44, at 2-5.) OverDrive points out that Lisa Pitagna ("Pitagna"), AT&T's Rule 30(b)(6) representative at deposition, was unable to provide clarity regarding the disputed billings.  Id. at 8-12, 17-18.

OverDrive claims that AT&T has failed to properly support its calculation of damages, using "invalid evidence, unsupported assumptions, and the failure to present underlying data and documents as the foundation" for its claim of damages. Id. at 17-19.  As noted earlier, the court sustained OverDrive's objections to certain supporting materials filed by AT&T, namely, the Gritchen affidavit (doc. 39, Plaintiff's Exhibit (hereinafter "PX") 2), as well as Exhibits 1, 5-6, 8, and 10-14. (Doc. 49.)

Plaintiff AT&T asserts that there are three accounts involved in this dispute:
1) a Managed Internet Services ("MIS") account, 2) a Local account, and 3) an
"Opus" account.  (Doc. 39, at 2.)

## A.  MIS Account

The MIS account is evidenced by the AT&T Master Agreement, MA
Reference No. 31574, dated October 2001.  (Doc. 39, at 2-3; PX 3.)  The MIS Master
Agreement consists of general terms and conditions, and has an integration clause
which incorporates any service attachments.  (PX 3, at 1.)

AT&T asserts that the MIS account (identified as "210104387 2233") "was
billed pursuant to the terms in the Master Agreement MA Reference No. 31574 and
Pricing Schedule."  (Doc. 39, at 3, ¶ 5; PX 3.)  The court has ruled that the Master
Agreement is admissible for summary judgment purposes.  (Doc. 49, at 10.)
However, the remainder of the supporting documentation (PX 2, 5, 6) has not been
properly authenticated.  (Doc. 49, at 12.)

As noted in the court's order on OverDrive's motions to strike, the Gritchen
affidavit (doc. 39, PX 2; doc. 40), which was offered to authenticate several exhibits,
does not satisfy the requirements for admissibility of business records.  (Doc. 49, at
7-8.)  Although Ray Fassett's deposition testimony refers to several exhibits, the
exhibits at his deposition were not provided in support of the motion, nor were most
of them identified sufficiently in those portions of his testimony provided to the
court.  See generally doc. 49, at 10; doc. 39, PX 4.

9

AT&T then states that "OverDrive subsequently upgraded its MIS services and signed a Service Order Attachment dated May 10, 2002 for a T3 (45 Mb/s) service with AT&T." (Doc. 39, at 3, ¶ 6; PX 7.)  The court has ruled that the Service Order Attachment is admissible for summary judgment purposes.  (Doc. 49, at 10.)

Next, AT&T claims that OverDrive has failed to pay AT&T $47,316.57 for its services.  (Doc. 39, at 3, ¶ 7.)  However, AT&T relies on Exhibit 6, a purported account reconciliation, to establish the amounts allegedly due and unpaid.[1]  The court has ruled that Exhibit 6 has not been properly authenticated.  (Doc. 49, at 11-12.)

AT&T has failed to carry its burden of proving the extent of damages suffered regarding the MIS account.  Peak, 811 N.Y.S.2d at 800; City of New York, 801 N.Y.S.2d at 11.  Thus, AT&T has failed to offer competent evidence raising a genuine issue of material fact sufficient to preclude summary judgment.  See, e.g., Rexnord Holdings, 21 F.3d at 526.  The motion for summary judgment is granted as to the MIS account.

---

[1]OverDrive avers that each allegedly erroneous invoice was contested upon receipt.  AT&T would thus be precluded from relying on the "account stated" theory to validate its billing.  (Doc. 37, DX 1, Potash aff., at ¶¶ 17-20, and DX 4, Fassett aff., at ¶¶ 25-27; doc. 44, at 3.)  See generally Gross v. Empire Healthchoice Assurance, Inc., 819 N.Y.S.2d 210, 2006 WL 1358474, at *2  (N.Y. Sup. Ct. May 18, 2006) (TABLE, text in WESTLAW) (agreement to pay debt implied if party keeps statement without objecting within reasonable time).

<u>B.  Local account</u>

AT&T asserts that OverDrive contracted with TGC "to lease rack/space for its equipment," and as the local service carrier, and that AT&T acquired TGC in 1998.  (Doc. 39, at 4, ¶¶ 8-9.)  AT&T states that OverDrive subsequently signed a Local Services Agreement for additional services.  <u>Id.</u> at ¶ 10.  AT&T claims that OverDrive was billed under account OVDV-OVDCV02, "the Local account," pursuant to their agreement and that OverDrive has failed to pay AT&T $215,110.39 for local services provided.  <u>Id.</u> at ¶¶ 11-13.

The documents supporting these allegations (PX 8, 10, 11, and 12) have not been authenticated.  (Doc. 49, at 10-11.)  Although Pitagna testified on AT&T's behalf with regard to the monthly billing for local services, <u>see</u> PX 9, Pitagna dep., at 69-70, there is no evidence properly before the court to establish the terms and conditions of the Local account, let alone the total amount, if any, that OverDrive owes to AT&T on the Local account.  <u>See also</u> doc. 37, at 9-12.

AT&T has failed to carry its burden of proving the extent of damages suffered regarding the Local account.  <u>Peak</u>, 811 N.Y.S.2d at 800; <u>City of New York</u>, 801 N.Y.S.2d at 11.  Thus, AT&T has failed to offer competent evidence raising a genuine issue of material fact sufficient to preclude summary judgment.  <u>See, e.g.</u>, <u>Rexnord Holdings</u>, 21 F.3d at 526.  The motion for summary judgment is granted as to the Local account.

### C.  Opus account

AT&T claims that, in February 2002, OverDrive contracted with AT&T for Voice/Data services under AT&T Master Agreement MA Reference No. ABNCMT 700359.  (Doc. 39, at 4-5, ¶ 14.)  AT&T states that OverDrive was billed under account 018-00267, "the Opus account," pursuant to their agreement and that OverDrive has failed to pay AT&T $13,551.00 for Voice/Data services provided.  Id. at ¶¶ 15-16.

Again, the documents supporting these allegations (PX 13 and 14) have not been authenticated.  (Doc. 49, at 10-11.)  There is no evidence properly before the court to establish the terms and conditions of the Opus account, or the total amount, if any, that OverDrive owes to AT&T on the Opus account.

Once more, AT&T has failed to carry its burden of proving the extent of damages suffered regarding the Opus account.  Peak, 811 N.Y.S.2d at 800; City of New York, 801 N.Y.S.2d at 11.  Thus, AT&T has failed to offer competent evidence raising a genuine issue of material fact sufficient to preclude summary judgment. See, e.g., Rexnord Holdings, 21 F.3d at 526.  The motion for summary judgment (doc. 37) is granted as to the Opus account, and thus summary judgment is granted to OverDrive on the breach of contract claim.

### D.  AT&T's motion on the breach of contract claim

In its response, plaintiff AT&T asserts that summary judgment should be granted in its behalf on its breach of contract claim.  (Doc. 39, at 6-7.)  AT&T argues that it is undisputed that the parties entered into a series of contracts for services.

Id. at 7.  AT&T states that the pricing terms were contained in Pricing Schedules or Contract Tariff terms for the applicable rates.  Because OverDrive allegedly did not fully pay the amounts due, AT&T claims it is entitled to summary judgment on the outstanding balances.  Id.

Because AT&T would have the burden of proof at trial, AT&T has the burden of affirmatively showing the absence of a genuine issue of material fact in order to prevail on its cross-motion for summary judgment.  AT&T must present evidence that would entitle it to a directed verdict if that evidence were not controverted at trial.  If the defendants respond to AT&T's motion with controverting evidence which demonstrates a genuine issue of material fact, the motion must be denied.  However, if, after analyzing the combined body of evidence presented by both parties, the evidence is such that no reasonable jury could find in favor of the defendants, then summary judgment would be entered on behalf of AT&T. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993); Fontenot v. Upjohn Co., 780 F.2d 1190, 1194 (5th Cir.1986) (movant must establish all essential elements of claim or defense); McGrath v. City of Philadelphia, 864 F.Supp. 466, 473 (E.D. Pa. 1994) (citing National State Bank v. Federal Reserve Bank of N.Y., 979 F.2d 1579, 1582 (3d Cir. 1992)).

As discussed more fully above, AT&T has failed to substantiate its allegations regarding the amounts at issue.  See generally doc. 44, at 2-5.  AT&T proffers Exhibits 6, 12, and 14, purported account reconciliations, to establish (in part) the amounts allegedly due and unpaid.  The invoices which presumably were

13

the basis for these account summaries have not been offered into evidence, thus the court has no way to evaluate their accuracy.  See generally Needham v. White Labs, Inc., 639 F.2d 394, 403 (7th Cir.), cert. denied, 454 U.S. 927 (1981) (proponent of summary must lay proper foundation for admissibility of underlying material and show that summary is accurate); Flame Coal Co. v. United Mine Workers of Am., 303 F.2d 39, 45-46 (6th Cir.), cert. denied, 371 U.S. 891 (1962).  In any event, the court has ruled that Exhibits 6, 12 and 14 have not been properly authenticated. (Doc. 49.)  Thus, AT&T's motion for summary judgment is denied, and no liability for attorney fees is incurred at this point.

## IV.  UNJUST ENRICHMENT

The amended complaint alleges that OverDrive requested and accepted telecommunications services from AT&T, and failed to pay for those services, thus becoming unjustly enriched.  AT&T alleges that OverDrive is indebted to AT&T under the theory of quantum meruit for the sum of $275,977.96.  (Doc. 8, at ¶¶ 16-19.

Under New York law, "[a] cause of action for unjust enrichment requires a showing that (1) the defendant was enriched, (2) at the expense of the plaintiff, and (3) that it would be inequitable to permit the defendant to retain that which is claimed by the plaintiff."  Clifford R. Gray, Inc. v. LeChase Const. Serv., LLC, 819 N.Y.S.2d 182, 187 (N.Y. App. Div. 2006).  Where the existence of a valid and enforceable contract governs a particular matter, there is no recovery in unjust

14

enrichment, as a quasi-contract claim.  Goldman v. Metropolitan Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005).

The parties appear to concur on this point.  OverDrive argues that "a party may not recover in quantum meruit where a valid and enforceable contract governs the relationship between the parties with respect to the subject matter for which the party seeks to recover."  (Doc. 37, at 19, citing Ross v. DeLorenzo, 813 N.Y.S.2d 756, 760 (N.Y. App. Div. 2006)).  In its response, AT&T points out that OverDrive admits the existence of a "series of contracts," and AT&T apparently drops its unjust enrichment claim, relying fully on the breach of contract claim.  (Doc. 39, at 9.)  Thus, the motion for summary judgment (doc. 37) on the unjust enrichment claim is granted as unopposed.

## V.  COUNTERCLAIM:  BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

Defendant OverDrive filed an answer and counterclaim to the amended complaint, in which OverDrive alleges a breach of an implied covenant of good faith and fair dealing.  (Doc. 17, at ¶ 47.)  OverDrive alleges that AT&T solicited its business by representing that AT&T could provide efficient and cost-effective telecommunications services.  Id. at ¶¶ 22-24.  As a result of negotiations, AT&T "proposed terms to OverDrive which included charges for 'non-recurring site preparation fee,' a monthly 'site license fee,' and a monthly fee for 'managed internet service and router,'" plus an additional monthly fee for a "local loop."  Id. at

15

¶¶ 25-26.  However, when OverDrive received the proposed contract, it raised concerns that the proposed contract did not accurately reflect the agreement reached between the parties.  Id. at ¶¶ 27-28.  OverDrive alleges that it received clarifications from an agent of AT&T which confirmed OverDrive's initial understandings of the terms.  Id. at ¶¶ 29-33.

Invoices received by OverDrive reflected charges substantially in excess of the charges allegedly agreed to by the parties.  Id. at ¶¶ 34-36, 44.  OverDrive alleges that it made partial payments, but could never receive an explanation for the excess charges.  Id. at ¶¶ 36-39.  At one point, AT&T "without advance notice or warning, intentionally and with malice terminated the telecommunications services to OverDrive."  Id. at ¶ 40.  Because of this termination, OverDrive was unable to fulfill its contracts with its customers.  Id. at ¶¶ 41-43.

In its cross-motion, AT&T argues that it is entitled to summary judgment on OverDrive's counterclaim alleging a breach of an implied covenant of good faith and fair dealing, because the charges were adequately described, and AT&T properly terminated services for nonpayment in accordance with the contract.  (Doc. 39, at 10.)  OverDrive responds that the issue of whether AT&T properly exercised its contractual right to terminate services for non-payment is the essential core of the case.  (Doc. 45, at 9.)  In the context of this cross-motion, the court construes the evidence in the light most favorable to the party opposing the cross-motion, which is OverDrive.  Kraus, 915 F.2d at 229.

Under New York law,

16

> all contracts imply a covenant of good faith and fair dealing in the
> course of performance.  This covenant embraces a pledge that "neither
> party shall do anything which will have the effect of destroying or
> injuring the right of the other party to receive the fruits of the
> contract."  While the duties of good faith and fair dealing do not imply
> obligations "inconsistent with other terms of the contractual
> relationship," they do encompass "any promises which a reasonable
> person in the position of the promisee would be justified in
> understanding were included."

511 West 232nd Owners Corp. v. Jennifer Realty Co., 773 N.E.2d 496, 500-501 (N.Y.

2002) (internal citations omitted).

"This covenant is breached when a party to a contract acts in a manner that,

although not expressly forbidden by any contractual provision, would deprive the

other party of the right to receive the benefits under their agreement."  P.T.& L.

Contracting Corp. v. Trataros Constr., Inc., 816 N.Y.S.2d 508 (N.Y. App. Div. 2006)

(quoting Aventine Inv. Mgt. v Canadian Imperial Bank of Commerce, 697 N.Y.S.2d

128 (N.Y. App. Div. 1999)).  An action for breach of the implied covenant asserts

that the party sought to prevent the performance of the contract, or to withhold its

benefits from the complaining party.  Dvoskin v. Prinz, 613 N.Y.S.2d 654, 662 (N.Y.

App. Div. 1994).

OverDrive, as counter-claimant, points out that a determination of bad faith

or disregard of the rights of the other party is generally a question of fact.  (Doc. 45,

at 8.)  See Gross, 2006 WL 1358474, at *4 (citing Pernet v. Peabody Engineering

Corp., 248 N.Y.S.2d 132 (N.Y. App. Div. 1964)).  AT&T acknowledges that this

determination is generally a question of fact, but asserts that "when the case is

replete with examples of a parties' [sic] actions summary judgment can be

appropriate."  (Doc. 39, at 10, citing <u>Meller v. Tancer</u>, 571 N.Y.S.2d 214 (N.Y. App.

Div. 1991)).[2]   However, the allegation here of a breach of the covenant of good faith

is made against AT&T, not against OverDrive.

More to the point, AT&T points out that "under the terms of the Contract,

AT&T may terminate services for Defendant's breach of contract, including the

failure to pay for the Services."  (Doc. 39, at 10, citing PX 3, Master Agreement, §

10.)  <u>See generally</u> <u>Chrysler Credit Corp. v. Dioguardi Jeep Eagle, Inc.</u>, 596

N.Y.S.2d 230, 232 (N.Y. App. Div. 1993) (party did not act in bad faith when it

exercised contractual right to terminate).

Although the payment terms have not been established by competent

evidence for purposes of these motions for summary judgment, the parties generally

agree that they had a contract, and that payment was expected for the services

rendered.  The parties disagree as to the proper amounts that were due.  The

evidence before the court is inconclusive:  it may eventually show that AT&T lacked

proper clarity in identifying the contractual source of the amounts invoiced, or it

may show that AT&T's invoices were totally or partially justified.

However, at this point, OverDrive has offered competent evidence raising a

genuine issue of material fact as to whether AT&T acted in a manner that would

---

[2]In <u>Meller</u>, the court found that a medical residency director did not act in
bad faith by refusing to certify the plaintiff's good character where the "the
plaintiff's residency file is replete with evaluations from the Senior Staff of the
Residency Program assessing the plaintiff's professional performance and personal
character as inadequate."  <u>Meller</u>, 571 N.Y.S.2d 214.

deprive OverDrive of the right to receive the benefits of their agreement.  Potash averred that OverDrive made repeated attempts to rectify alleged billing errors, and made partial payments in excess of $200,000, before AT&T terminated service without warning.  (Doc. 37, DX 1, Potash aff., at ¶¶ 17-20, 23-25.)

In addition, Fassett averred that he noted a discrepancy in the contractual billing arrangements early on, and believed that he had rectified the problem with Linda Holzschu, an AT&T sales representative.  (Doc. 37, DX 4, Fassett aff., at ¶¶ 15-23.)  Nevertheless, he stated suspect invoices were issued to OverDrive, and that "[d]espite numerous inquiries and hundreds of hours, by telephone and e-mail, attempting to decipher and reconcile ATT's invoices, ATT could not fully or completely explain to [Fassett] the amounts credited to OverDrive, the nature of the services being billed or mis-billed, and whether such services were those contracted by OverDrive."  Id. at ¶¶  25-27.   Fassett averred that OverDrive consistently disputed the charges, and that AT&T could never provide a clear statement of the basis for the charges consistent with OverDrive's contracts with AT&T.  Id. at ¶¶ 30-32.  Nonetheless, AT&T terminated service.

Construing the evidence in the light most favorable to the party opposing the cross-motion, OverDrive has carried its burden to offer competent evidence raising a genuine issue of material fact as to its counterclaim of breach of an implied covenant of good faith and fair dealing.  The motion for summary judgment (doc. 39) on this claim is denied.

19

## VI.  COUNTERCLAIM:  FRAUDULENT MISREPRESENTATION

OverDrive alleges that AT&T "committed fraud upon the [*sic*] OverDrive by misrepresenting to OverDrive material facts upon which OverDrive justifiably relied inducing OverDrive to act upon such misrepresentations by terminating its then current telecommunications carrier and engaging [AT&T], which resulted in damages to OverDrive in over-billing OverDrive and in [AT&T]'s wrongful termination of telecommunications services."  (Doc. 17, at ¶ 48.)

In its memorandum in response to AT&T's motion for summary judgment, OverDrive characterizes this claim as the tort of fraudulent inducement, and argues that it is governed by Ohio law, since the tort predates the resulting contract.  (Doc. 45, at 3 n.2.)  AT&T responds that New York law should apply.  (Doc. 48, at 5.)  The torts in both states have several similar elements.

Under Ohio law, the elements of fraudulent misrepresentation, or fraudulent inducement, are:

> (1) a representation or, where there is a duty to disclose, concealment of a fact,
> (2) which is material to the transaction at hand,
> (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,
> (4) with the intent of misleading another into relying upon it,
> (5) justifiable reliance upon the representation or concealment, and
> (6) a resulting injury proximately caused by the reliance.

Cohen v. Lamko, Inc., 10 Ohio St.3d 167, 169, 462 N.E.2d 407, 409 (1984) (per curiam); Funk v. Durant, 155 Ohio App.3d 99, 103, 799 N.E.2d 221, 224 (Ohio Ct. App. 2003).  Without evidence of a representation, a claim for fraudulent

20

inducement cannot be made.  <u>Countrymark Cooperative, Inc. v. Smith</u>, 124 Ohio App.3d 159, 172, 705 N.E.2d 738, 746 (Ohio Ct. App. 1997) (citing <u>Burr v. Stark Cty. Bd. of Commrs.</u>, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986)).

Under New York law, the elements of fraudulent misrepresentation are "misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury."  <u>Lama Holding Co. v. Smith Barney Inc.</u>, 668 N.E.2d 1370, 1373-1374 (N.Y. 1996); <u>Friedman v. Anderson</u>, 803 N.Y.S.2d 514, 517  (N.Y. App. Div. 2005).  The plaintiff must show that the defendant knowingly uttered a false statement with the intention of depriving the plaintiff of a specific benefit, thereby deceiving and damaging him.  <u>Friedman</u>, 803 N.Y.S.2d at 517.

Moreover, the pleadings regarding fraud have a higher threshold than is usual under the "notice pleading" regime of modern courts.  Allegations of fraudulent misrepresentation must satisfy the requirements of Federal Rule 9(b), namely, that "the circumstances constituting fraud . . . shall be stated with particularity."  Fed. R. Civ. P. 9(b); <u>Yuhasz v. Brush Wellman, Inc.</u>, 341 F.3d 559, 563 (6th Cir. 2003).

The Sixth Circuit interprets Rule 9(b) as requiring plaintiffs to "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."  <u>Yuhasz</u>, 341 F.3d at 563 (quoting <u>Coffey v. Foamex L.P.</u>,

2 F.3d 157, 161-162 (6th Cir. 1993)).  New York and Ohio state courts have similar requirements.  See Friedman, 803 N.Y.S.2d at 517 (plaintiff seeking to recover for fraud and misrepresentation required to set forth specific and detailed factual allegations that defendant personally participated in, or had knowledge of, any alleged fraud); Kimball v. Duy, No. 2002-L-046, 2002 WL 31886713, at *3 (Ohio Ct. App. Dec. 27, 2002) (circumstances constituting fraud shall be stated with particularity); Crosby v. Beam, 83 Ohio App.3d 501, 509, 615 N.E.2d 294, 300 (Ohio Ct. App. 1992) (same).

AT&T claims it is entitled to summary judgment on OverDrive's counterclaim alleging fraudulent misrepresentation, because OverDrive admits that no misrepresentations were made concerning the terms of the contracts, and the recurring charges.  (Doc. 39, at 11.)  AT&T also points out that OverDrive does not support its fraud claim with specific or detailed facts sufficient to satisfy the above requirements.  (Doc. 48, at 6.)

The allegations of the counterclaim are that Linda Holzschu, on behalf of AT&T, through a series of electronic mail messages on May 4, 2001, represented to OverDrive that AT&T would provide telecommunications services to OverDrive at the monthly charge of $5616.00, plus an additional $400.00 for the local loop.  (Doc. 17, at ¶¶ 29-31.)  OverDrive relied on these material representations to decide to sign agreements with AT&T for these services.  Id. at ¶¶ 32-33.

The allegations become less specific and detailed when addressing the elements of 1) misrepresentation of fact which was false and known to be false by

22

the defendant, and 2) the intent to mislead another into relying on the falsity. OverDrive simply states that AT&T "knowingly invoiced OverDrive an amount that [AT&T] could neither justify nor support under the terms agreed upon by the parties," and AT&T "had no intention of complying with the terms of the parties' agreement."  (Doc. 17, at ¶¶ 44-45.)  These allegations do not appear, on their face, to address the misrepresentations which allegedly induced OverDrive to sign the contested agreements, but rather concern allegedly wrongful conduct related to the subsequent billing for the services provided.

In other words, there is no specific allegation that Holzschu, or AT&T, knowingly made a false representation of fact on May 4, 2001, or at some other time, with the fraudulent intent to mislead or induce OverDrive to sign the agreements based on the misrepresentation.  Although AT&T did not file a motion to dismiss the counterclaims on this basis, it raised the failure to plead fraud with specificity as a defense.  (Doc. 18, at 8, ¶ 13.)

OverDrive's response to the motion for summary judgment does not remedy these deficiencies:

> ATT, either through Linda Holzschu [*sic*], misrepresented the agreed-upon charges, or ATT misrepresented the agreed-upon charges per the Master Agreement per Lisa Pitagna testimony, or ATT misrepresented the agreed-upon charges in its billing, but somehow, ATT misrepresented material facts to OverDrive.
>
> * * * * *
>
> Given ATT's conduct from the very first invoice, OverDrive has established a genuine issue of material fact of the falsity of ATT's representations and ATT's knowledge of such false representations.

23

(Doc. 45, at 4.)  AT&T argues that OverDrive does not present any specific or detailed facts that would create an "issue of material fact that AT&T had knowledge and intent to deceive at the time it signed the Master Agreement and Pricing Schedule with OverDrive to determine the pricing and additional terms of the Services under the MIS account."  (Doc. 48, at 6.)

OverDrive has not carried its burden to offer sufficient detailed evidence raising a genuine issue of material fact as to its counterclaim of fraudulent misrepresentation, or fraudulent inducement, whether analyzed under Ohio law or New York law.  See, e.g., Cohen, 10 Ohio St.3d at 169; Countrymark Cooperative, 124 Ohio App.3d at 172, 705 N.E.2d at 746; Lama Holding, 668 N.E.2d at 1373-1374; Friedman, 803 N.Y.S.2d at 517.   The motion for summary judgment (doc. 39) on this claim is granted.


## VII.  COUNTERCLAIM: TORTIOUS INTERFERENCE

Finally, AT&T asserts that OverDrive did not properly plead its counterclaim for tortious interference.  (Doc. 39, at 11.)  AT&T argues that OverDrive failed to allege the existence of a specific contract between OverDrive and a third party which has been suffered some damage.  Id. at 11-12.  The counterclaim alleges:

> Plaintiff willfully, maliciously and tortiously, without justification or other excuse, interfered with OverDrive's business contracts of which plaintiff knew, resulting in damages to OverDrive.

24

(Doc. 17, at ¶ 49.)  OverDrive responds that, although the motion is styled as a motion for summary judgment, doc. 39, at 11, AT&T is substantively arguing a motion to dismiss for failure to state a claim.  (Doc. 45, at 6-7.)

Again, OverDrive argues that the claim is governed by Ohio law, since the tort was allegedly committed within Ohio, and it is not covered by any choice of law provisions.  (Doc. 45, at 6.)  AT&T's motion is based on New York law.  (Doc. 39, at 11-12.)

## A.  Tortious Interference in Ohio

To recover for a claim of intentional interference with a contract under Ohio law, "one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages."  Kenty v. Transamerica Premium Ins. Co., 72 Ohio St.3d 415, 650 N.E.2d 863, 864 (1995) (syllabus). Establishing the fourth element requires proof that the defendant's interference with another's contract was improper.  Fred Siegel Co., L.P.A. v. Arter & Hadden, 85 Ohio St.3d 171, 707 N.E.2d 853  (1999) (syllabus).

Although OverDrive points to allegations in the counterclaim which identify some of its clients, and asserts that the service termination "would undermine OverDrive's ability to perform per the contractual arrangements with its customers," the asserted harm is simply phrased as, "OverDrive suffered damages as a result of [AT&T]'s misconduct."  (Doc. 45, at 7; doc. 17, at ¶¶ 42, 46.)  The counterclaim fails to identify a specific client and contract with which AT&T

25

interfered, fails to identify a contract which was breached because of AT&T's alleged interference, and additionally fails to identify specific damages.  (The response to the motion for summary judgment does not provide any further detail.) See generally doc. 17; doc. 45, at 6-7; doc. 48, at 6-7.

Also, under Ohio law, the alleged wrongdoer in a tortious interference action must be a non-party to the contract.  Castle Hill Holdings, LLC v. Al hut, Inc., No. 86442, 2006 WL 726911, at *6 (Ohio Ct. App. Mar. 23, 2006) (citing Kenty, 72 Ohio St.3d at 418, 650 N.E.2d at 866).  In other words, only a third party can be found liable for tortious interference.  Tri-Med Fin. Co. v. National Century Fin. Enter., Inc., 208 F.3d 215, 2000 WL 282445, at *6 (6th Cir. Mar. 6, 2000) (TABLE, text in WESTLAW).  The Ohio Supreme Court, in Digital & Analog Design Corp. v. North Supply Co., 44 Ohio St.3d 36, 540 N.E.2d 1358 (1989), addressed the relevant distinction between a tortious interference case and a simple breach of contract:

> It is well established that "though a breach of a duty under a contract or lease necessarily interferes with the injured party's business relations with third parties, the injured party is limited to an action for breach of contract and may not recover in tort for business interference."

Klusty v. Taco Bell Corp., 909 F.Supp. 516, 524 (S.D. Ohio 1995) (quoting Digital & Analog, 44 Ohio St.3d at 46, 540 N.E.2d at 1368).  Thus, AT&T cannot be liable under Ohio law regarding tortious interference.

### B.  Tortious interference in New York

In New York, the cause of action is defined thus:

> Tortious interference with contract requires the existence of a valid
> contract between the plaintiff and a third party, defendant's
> knowledge of that contract, defendant's intentional procurement of the
> third-party's breach of the contract without justification, actual breach
> of the contract, and damages resulting therefrom.

Lama Holding, 668 N.E.2d at 1375 (citing Israel v. Wood Dolson Co., 134 N.E.2d 97

(N.Y. 1956)).  In order for a party to have a cause of action for tortious interference

of contract, there must be a link to a breach of contract.  NBT Bancorp Inc. v.

Fleet/Norstar Fin. Group, Inc., 664 N.E.2d 492, 495 (N.Y. 1996) (rejecting argument

that defendant's deliberate interference with plaintiff's contractual rights that

causes damage should be punishable as tortious interference whether or not

contract actually breached); Jack L. Inselman & Co., Inc. v. FNB Fin. Co., 364

N.E.2d 1119, 1120 (N.Y. 1977).

A general allegation that business relations with customers have suffered is

insufficient, rather, the allegations must specifically identify which business

relations defendants have interfered with.  Schoettle v. Taylor, 723 N.Y.S.2d 665,

666 (N.Y. App. Div. 2001).  In addition, the conduct which allegedly constitutes

tortious interference with contract must not be conduct directed at the plaintiff, but

at the party with which the plaintiff has a contract.  Carvel Corp. v. Noonan, 818

N.E.2d 1100, 1104-1105 (N.Y. 2004) (citing G.K.A. Beverage Corp. v. Honickman, 55

F.3d 762, 768 (2d Cir.), cert. denied, 516 U.S. 944 (1995)).

Where there is no allegation that the defendant intentionally procured a

third party's breach of its contract with the plaintiff, nor that the third party in fact

breached its contract, the action is properly dismissed.  Lama Holding, 668 N.E.2d

27

at 1376.  See also G.K.A. Beverage,  55 F.3d at 767-768 (affirming dismissal, where nothing in allegations reasonably suggests that target of defendant's conduct was third party's contractual arrangements with plaintiffs).

As noted above, the counterclaim fails to identify a specific client and contract with which AT&T interfered, and fails to identify a contract which was breached because of AT&T's alleged interference.

Whether analyzed under Ohio law or New York law, OverDrive's allegations regarding the counterclaim for tortious interference are insufficient.  Even if all the allegations as stated were proven, the facts would fail to state a claim upon which relief can be granted.  The motion is granted as to the counterclaim for tortious interference.


## VIII.  SUMMARY

OverDrive's motion for summary judgment (doc. 37) is GRANTED as to the breach of contract claims, because AT&T failed to present competent, affirmative evidence demonstrating the existence of a genuine issue of material fact. Specifically, AT&T failed to carry its burden of proving the existence or extent of its damages.  The motion for summary judgment on the unjust enrichment claim is GRANTED as unopposed.

AT&T's motion for summary judgment (doc. 39) on the counterclaim of breach of an implied covenant of good faith and fair dealing is DENIED, because OverDrive carried its burden to offer competent evidence raising a genuine issue of

material fact on that counterclaim.  The motion for summary judgment on the counterclaim of fraudulent misrepresentation, or fraudulent inducement, is GRANTED, because OverDrive did not carry its burden to offer sufficient evidence raising a genuine issue of material fact.  The motion is GRANTED as to the counterclaim for tortious interference, because the allegations regarding the counterclaim are insufficient to state a claim upon which relief can be granted.

      IT IS SO ORDERED.

Jan. 10, 2007             /s/ Kenneth S. McHargh
                                   Kenneth S. McHargh
                                   United States Magistrate Judge